```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4              v.                           S1 11 Cr. 897 JFK

 5   MANSSOR ARBABSIAR,
     a/k/a "Mansour Arbabsiar,"
 6
                Defendant.
 7
     ------------------------------x
 8

 9
                                             May 30, 2013
10                                           11:08 a.m.

11

12

13   Before:

14                      HON. JOHN F. KEENAN,

15                                           District Judge

16

17                          APPEARANCES

18

19   PREET BHARARA,
          United States Attorney for the
20        Southern District of New York
     GLEN KOPP,
21   EDWARD KIM,
     STEPHEN RICHIN,
22        Assistant United States Attorneys

23

24

25
```

APPEARANCES (Continued)


FEDERAL DEFENDERS SERVICES UNIT
     Attorneys for defendant Arbabsiar
BY:  SABRINA SHROFF,
     EDWARD ZAS,
     Assistant Federal Defenders


Also Present:
     CHRISTOPHER RAIA, Special Agent FBI
     MARY DELSENER, Paralegal, U.S. Attorney's Office
     RAPHELLA FRIEDMAN, Paralegal, Federal Defender's Office

D5UJARBS                       Sentence

1               (In open court)

2               (Case called)

3               THE COURT:  Good morning, everyone.  You may be
4    seated.  This is in the matter of the United States of America
5    against Manssor Arbabsiar, Indictment No. S1 11 Cr. 897.
6               Ms. Shroff, I address you first.  Have you read the
7    probation report?
8               MS. SHROFF:  I have, your Honor.
9               THE COURT:  Has Mr. Arbabsiar read the report and have
10   you gone over it with him?
11              MS. SHROFF:  Your Honor, Mr. Arbabsiar and I read the
12   presentence report together, and he has reviewed it as well as
13   the addendum.
14              THE COURT:  Do you have any objections to the report?
15              MS. SHROFF:  I do not, your Honor.
16              THE COURT:  All right.  Are you ready for sentence?
17              MS. SHROFF:  Mr. Arbabsiar is ready to proceed to
18   sentence.
19              THE COURT:  I will hear you on sentence.
20              MS. SHROFF:  Thank your Honor.
21              Your Honor, it is not just a hollow acknowledgement or
22   a statement to say here this is one of the most serious crimes
23   that this Court has addressed.  I think Mr. Arbabsiar and
24   everyone here is fully aware not just of the results of what
25   could have happened had this gone through, but there also has

1   been a lot of mention of Mr. Arbabsiar's statements during the
2   time of the offense.  There is no taking away from the
3   seriousness of what Mr. Arbabsiar said and, of course, there is
4   no taking away from the statements that Mr. Arbabsiar made and
5   the manner in which he made them.
6           So the court has focused during the two hearings as it
7   did yesterday about what Mr. Arbabsiar said when asked by the
8   confidential informant whether or not the plot to kidnap, which
9   then transformed into the plot to assassinate, should go
10  forward, and Mr. Arbabsiar acknowledges that that was, indeed,
11  a very serious statement and a very poor statement he made.
12          In sentencing Mr. Arbabsiar, it would be easy and not
13  terribly difficult to simply focus on that, but 3553 (a), 18
14  U.S.C. 3553 (a) requires us all to do more.  The statute
15  requires us to look at not just the offense and the offense
16  conduct, but also to look at the defendant.
17          Mr. Arbabsiar is a 58-year-old man.  Up to this
18  offense he had absolutely no criminal history that would lead
19  anyone to think that he would participate in this kind of
20  offense conduct.  He worked his entire life.  He wasn't
21  terribly successful at it, but he worked.
22          As he says to the court in his letter and as the
23  family members say to the court, Mr. Arbabsiar was a good
24  father and a very good son.  He raised his son in a manner that
25  shows clearly that he loves him dearly.  He did all that he

could to support his son, and the same holds true for what he did for his mother and his brothers and his sisters.

Each one of these family letters speaks to the kind-hearted person that Mr. Arbabsiar was and is to them. It shows a person who for 58 years of his life did nothing other than what most of us do; have a job, raise his family and try to live a good life.

Mr. Arbabsiar most certainly takes responsibility for his conduct here. He recognizes fully the import of what it is that could have happened, and I think when Mr. Arbabsiar speaks to the court, I hope the court is able to sense his true remorse and his hopes.

The one point the government submission makes, and I would like to address it very briefly before I sit down, is Mr. Arbabsiar's complete cooperation with the United States Attorney's Office and law enforcement after he was stopped at the airport. The government in its submission suggests that Mr. Arbabsiar did not provide to it information that is such that the court should depart from the guideline range.

We most respectfully disagree, and to that end I ask, if I may just hand up to the court, and the government has this, it is the FBI agent's write-up and recollections of the fall 2011 Arbabsiar interview that was provided to Dr. Saathoff, and in that the FBI agent tells Dr. Saathoff, and I quote --

1              THE COURT:  It would have been much nicer if you gave
2     me this before this morning, but go ahead.
3              MS. SHROFF:  You have it, your Honor.
4              THE COURT:  What?
5              MS. SHROFF:  I did give it to the court.
6              THE COURT:  When?
7              MS. SHROFF:  It is in the exhibits that we introduced
8     at the hearing.
9              THE COURT: Oh, all right, okay.  I see.  Now I know
10    the document you are referring to.  Go ahead.
11             MS. SHROFF:  It says, and I quote --
12             THE COURT:  Since you were handing it up this morning,
13    I thought this was the first I was going to see it.  You can
14    give to me again.  Go ahead.
15             MS. SHROFF:  It is just two lines, your Honor.  It
16    says the FBI agent tells Mr. Dr. Saathoff, "Towards the end we
17    realize we could gain intelligence.  We gained a lot of
18    intelligence."
19             He is talking about the FBI speaking to Mr. Arbabsiar
20    over the period of twelve days after this.  I don't think
21    Mr. Arbabsiar nor anyone at this table minimizes any conduct or
22    anything that he did, but we do ask the court, your Honor, to
23    consider all the personal facts that are recited as well as his
24    small step towards trying to make right what he did wrong, and
25    I ask the court to impose a sentence that we requested.

1              THE COURT:  Did you want to hand this up?
2              MS. SHROFF:  Thank you.
3              THE COURT:  Sure.
4              (Pause)
5              THE COURT:  I have seen this and I have read it
6     before.  Thank you.  Does anyone wish to speak on behalf of the
7     government?
8              MR. KOPP:  Yes, your Honor.
9              THE COURT:  All right, Mr. Kopp.
10             MR. KOPP:  Your Honor, this case is not about just
11    what Arbabsiar said.  It is about what he did, what he wanted
12    to have done, the manner in which he wanted it to be done, the
13    people he was doing it with, and the results that would have
14    come from this plot.
15             The statutory maximum sentence of 25 years
16    imprisonment is the guidelines sentence here and it is the same
17    sentence recommended by the Probation Office.  It is the
18    appropriate sentence here for a defendant who worked for over
19    six months to assassinate a foreign diplomat on American soil
20    with the knowledge of the mass carnage that could result.  He
21    is no candidate for your Honor's mercy here.
22             This defendant engaged in a murderous scheme with
23    members of the military of a foreign power hostile to the
24    United States and worked to employ deadly assassins from a
25    Mexican drug cartel to do the dirty-work of another country.

1   It is an extraordinary crime that requires an equally serious
2   sentence.
3            The extraordinary nature of this crime is reflected in
4   the Probation Office description of their conclusion as to why
5   25 years is appropriate here.  I am quoting from the PSR:
6            "The defendant's participation in the instant offense
7   and his disdain for the lives of potential innocent victims is
8   disturbing.  While we do not believe any mental health issues
9   led him down this path, his motivation to involve himself in
10  such a horrific crime is unclear.  Regardless, it is difficult
11  to consider anything but a lengthy term of imprisonment. For
12  such a significant crime, we believe that this term of
13  incarceration, 25 years, conforms with the purposes set forth
14  in 18 U.S.C. Section 3553 (a)."
15           Your Honor, the government fully agrees with the
16  sentencing recommendation of the Probation Office.  The
17  seriousness of this offense demonstrates the moral bankruptcy
18  of this defendant, and the need for a serious sentence here is
19  the need to send a message of deterrence to anyone who would
20  choose to assist those who want to settle scores with other
21  nations on our soil with resulting deaths of potentially
22  hundreds of people.
23           Your Honor, I want to just address something that Ms.
24  Shroff mentioned about the defendant's cooperation or
25  assistance to the government they called cooperation.  There is

1  a significant difference between someone who assists after his
2  arrest and makes statements and provides information than
3  someone who decides to cooperate with the government and earn
4  themselves a cooperation agreement and a 5K letter.
5            This defendant pulled up short.  During the course of
6  the phone calls, he decided to stop on his own volition making
7  calls for the FBI.  After that he decided not to come in to
8  speak to the government.  There is no cooperation agreement
9  here.  That limits what the government can do with his
10 information and shows it is not someone who has fully embraced
11 cooperation and what that means, which is an extraordinary show
12 of remorse and a turning of the corner.
13           So, your Honor, the government does not believe that
14 in light of the seriousness of this offense, the defendant's
15 assistance in providing information after his arrest suffices
16 to earn him any downward variance in this case.
17           Finally, your Honor, just to address the two days of
18 hearings that we had, the government, based on the evidence
19 there, wants to state that there again the evidence is clear
20 from the hearings that Mr. Arbabsiar was not suffering from a
21 mental disorder that would have impacted or caused his
22 participation in this offense.
23           Even if he was suffering from hypomania, again the
24 concessions of the defense expert that he could not make a
25 causal link between hypomania and the defendant making

D5UJARBS                         Sentence

1   decisions during the course of those six months makes none of
2   that matter.  It should not be significant.  It is not
3   significant and should not have any impact on your Honor's
4   decision as to the proper sentence here.
5            THE COURT:  Thank you, Mr. Kopp.
6            Mr. Arbabsiar, please rise, sir.  Is there anything
7   you wanted to say because if there is, now is the time to say
8   it and you may tell me anything you wish.
9            THE DEFENDANT:  I have one thing to read.
10           THE COURT:  You can read it and speak loud enough and
11  read slowly so the Court Reporter can hear it.
12           THE DEFENDANT:  Not much, just a little bit.
13           THE COURT:  Go ahead.
14           THE DEFENDANT:  I said it and she wrote it down for
15  me.
16           THE COURT:  You know what you want to tell me.
17           THE DEFENDANT:  I want to say thank you for being
18  patient with me.  I have respect for you, Judge.  Whatever I
19  did wrong, I take responsibility for it.  I can't change what I
20  did.  I have a good heart.  I never hurt anyone anybody,
21  anyone.  My mind sometimes is not in a good place.  It runs
22  ahead of my -- it goes faster than myself.  I was also good to
23  my son and a good son to my mother.  I know that you have to
24  punish me for the things I did wrong.  I respect that, and
25  hopefully one day I can go home and see my son and my family.

1             THE COURT:  Anything else, sir?

2             THE DEFENDANT:  That is it.  Thank you, Judge.

3             THE COURT:  Stay standing, sir, please.

4        I have read the probation report, dated April 19th,

5   2013, and the defense submissions which I received on May 1st

6   and May 3rd, 2013, including the exhibits thereto and the

7   several letters submitted on behalf of the defendant.  I have

8   also read the sentence memorandum of the government, dated May

9   2, 2013.

10            Before me is a 58-year-old defendant who pleaded

11  guilty pursuant to a plea agreement.  The plea was was on

12  October 18th, 2012.  The Probation Department recommends a

13  sentence totaling 25 years and finds that the total offense

14  level was calculated to be 46, that because of Note 2 to

15  Chapter 5, Part A, of the sentencing guidelines, and I am

16  quoting from the guidelines now, "an offense level of more than

17  43 is to be treated as an offense of 43."

18            That is the end of the quote.  The criminal history

19  category is Roman VI, as set forth in Paragraph 50 of the

20  presentence report, not Roman I, as it is erroneously at Page

21  26 of the report.  If you look at Page 26 of the report, it

22  says Criminal History Category Roman I.  It should be VI.  I

23  find the total offense level is 43 and that the criminal

24  history category, pursuant to Section 3A1.4 of the sentencing

25  guidelines is Roman VI.

I recognize full well the guidelines call for a sentence range of 25 years and are merely advisory and are not binding upon me. I have considered the factors set forth in Title 18, United States Code, Section 3553 (a). I have considered the nature and circumstances of the offense and the history and characteristics of the defendant. I have thought about the kinds of sentences available and I have considered the need to avoid unwarranted sentence disparities amongst defendants.

I am imposing a sentence sufficient but not greater than necessary to comply with the purposes of sentencing, which are, of course, to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner.

This 58-year-old defendant is a native of Iran, who is a naturalized American citizen. He conspired with members of the Islamic Republic Guard Corps. to assassinate the Ambassador from Saudi Arabia to the United States in Washington, D.C. He fully realized that this act would likely result in mass casualties. He arranged for two wire transfers in August of 2011 to be sent through Manhattan to an undercover FBI bank

1  account.  The wire transfers amounted to a total just under a
2  hundred thousand dollars, of $99,920.  This amount was to be
3  the down payment for the murder of the Ambassador in a
4  restaurant in Washington, D.C., our nation's capital.  When
5  told that there would likely be from "100 to 150 people in the
6  restaurant," including United States Senators, he respond this
7  was "no problem" or "no big deal."
8      The plot was hatched in Iran, and a member of the
9  Islamic Republic Guard Corps., known as the Qods Force, was
10 among the co-conspirators.  Thanks to excellent work by the
11 Federal Bureau of Investigation, the defendant was arrested and
12 acknowledged his role in the plot and described the involvement
13 of his Iranian co-conspirators.
14     The defendant was himself to benefit financially from
15 his involvement in the plot.  An extensive Fatico hearing was
16 conducted before me on May 8, 2013 and yesterday, May 29th,
17 2013.  Dr. Michael First, a Professor of Clinical Psychiatry at
18 Columbia University, testified for the defense, and Dr. Elissa
19 Miller, the Chief Psychologist at the Metropolitan Correctional
20 Center, and Dr. Gregory Saathoff, a psychiatrist, testified for
21 the government.
22     Dr. First believed that the defendant's mental
23 condition was Bipolar II and he was suffering from a hypomanic
24 episode during the conspiracy.  Drs. Miller and Saathoff
25 dispute this and maintain that he is not suffering from a

D5UJARBS                         Sentence

bipolar disorder. The defense seeks a sentence of 10 years, and the government seeks a 25-year sentence as recommended by the Probation Department.

Drs. First, Miller and Saathoff are all qualified in their areas of expertise, but the court concludes that Dr. Saathoff was more convincing than Dr. First. Dr. Saathoff spent 32 to 33 hours interviewing Mr. Arbabsiar, while Dr. First's interviews took a total of 24 hours, as to the testimony at the hearing.

Moreover, Dr. First acknowledged that recorded conversations between Mr. Arbabsiar and a confidential informant did not indicate that hypomanic episode persisted continuously throughout the life of the conspiracy. The court observes that the defense diagnose of the defendant has switched over time. Originally in the July 13th, 2012 report, Dr. First described the defendant as being manic and classified him as bipolar without specifying him as Bipolar I or Bipolar II. Now in his April 16th, 2013 report, Dr. First described the defendant as being Bipolar II and having undergone hypomanic symptoms. Dr. First has concluded that the defendant is mentally competent to stand trial and that he knows right from wrong.

Nothing in the record before me warrants a sentence of less than 25 years. In a case like this, deterrence is of supreme importance. Others who may have financial or political

1   purposes in engaging in acts of violence against the United
2   States or its interests must learn the lesson that such conduct
3   will not be tolerated.  The fact that the defendant's age was
4   58 when he was first questioned and he began to cooperate which
5   he abruptly ceased doing is not of moment.
6            It is adjudged on Count 1, the defendant is committed
7   to the custody of the Attorney General of the United States or
8   his authorized representative for a term of 10 years, which is
9   120 months.
10           On Count 2, the defendant is committed to the custody
11  of the Attorney General of the United States or his authorized
12  representative for a term of 10 years, which is 120 months.
13           On Count 3, the defendant is committed to the custody
14  of the Attorney General of the United States or his authority
15  representative for a term of 60 months, which is five years.
16           The sentences of incarceration are all to run
17  consecutively and not concurrently.  Thus, the total sentence
18  is 300 months, which is 25 years.  While incarcerated, the
19  defendant is to receive the appropriate medical treatment for
20  his high blood pressure and any other medical problems.
21           At the expiration of the term of incarceration, the
22  defendant is to serve a period of three years supervised
23  release on each count.  The periods of supervised release are
24  to run concurrently and not consecutively under the standard
25  and mandatory conditions of supervised release.

1            As a special condition of supervised release, the
2    defendant is to participate in any mental health program
3    suggested or approved by the Probation Department.  The
4    defendant is to continue to take any prescribed medications
5    unless otherwise instructed by the health care provider.  He is
6    to contribute to the costs of services rendered not covered by
7    third-party payment if he has the ability to pay.  I authorize
8    the release of available psychological and psychiatric
9    evaluations and reports to the health care provider.
10           The defendant is to submit his person, his residence,
11   his place of business, his vehicle or any other premises under
12   his control to search on the basis Probation has reasonable
13   belief that contraband or evidence of a violation of the
14   conditions of release may be found.  Any search is to be
15   conducted at a reasonable time and in a reasonable fashion.
16   Failure to submit to search may be grounds for revocation.  The
17   defendant is to inform any other residents that the premise may
18   be subject to search pursuant to this condition.
19           The defendant is to report to the nearest Probation
20   Office within 72 hours of his release from custody.  Three
21   $100.00 special assessments are ordered as required by law, for
22   a total special assessment of $300.00.  I am not fixing a fine
23   because the defendant does not have the wherewithal to pay a
24   fine.
25           Addressing Mr. Kopp, is there any forfeiture order

1  here?
2          MR. KOPP:  Yes, the government has provided you with a
3  consent forfeiture order signed by the parties.
4          THE COURT:  Thank you.  I have signed the forfeiture
5  order.  Copies should be provided to Ms. Shroff, to the
6  Government and to the defendant himself.  Both sides are
7  advised of their right to appeal since this is a sentence under
8  the sentencing guidelines.
9          That is the sentence of the court.
10         MR. KOPP:  Your Honor, just one thing.  The government
11 respectfully requests the underlying counts against the
12 defendant be dismissed.
13         THE COURT:  Your application is granted.
14         MS. SHROFF:  Your Honor, on behalf of Mr. Arbabsiar,
15 may I request that the court recommend that he receive
16 treatment while incarcerated in the Bureau of Prisons and --
17         THE COURT:  I said I want him to receive medical
18 treatment.
19         MS. SHROFF:  Thank your Honor.
20         THE COURT:  There is no question that will be in the
21 judgment, and I said that when I set the sentence.
22         MS. SHROFF:  May I ask the court to recommend he be
23 designated as close to the State of Texas as possible?
24         THE COURT:  I am not going to get involved in that in
25 this case because of the nature of the crime.  I am going to

D5UJARBS                         Sentence

leave that up to the Bureau of Prisons.  I certainly have no objection if he is institutionalized in the State of Texas or near the State of Texas, that is fine with me, but I am not going to start telling the Bureau of Prisons where to place this defendant.  Thank you.

        MS. SHROFF:  Thank your Honor.

        THE COURT:  Thank you.  Thank you, Marshals.

        (Court adjourned)