**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------X
MANSSOR ARBABSIAR,                    :
                                      :
                Petitioner,           :
                                      :    Nos. 14 Civ. 3222 (JFK)
        -against-                     :         11 Cr. 897 (JFK)
                                      :
UNITED STATES OF AMERICA,             :    **OPINION & ORDER**
                                      :
                Respondent.           :
------------------------------X

**JOHN F. KEENAN, United States District Judge:**

    Before the Court is Petitioner Manssour Arbabsiar's
("Arbabsiar" or "Petitioner") pro se motion to vacate, set
aside, or correct his sentence pursuant to 28 U.S.C. § 2255 and
to assign new counsel.  For the reasons that follow,
Petitioner's motion is denied.

                    **I.   Background**

    On October 18, 2012, Petitioner pled guilty to conspiring
with officials in the Iranian military to assassinate the Saudi
Arabian Ambassador to the United States.  The Plea Agreement
charged Arbabsiar with conspiracy to commit murder for hire, in
violation of 18 U.S.C. § 1958, and with conspiracy to commit an
offense against the United States under 18 U.S.C. § 2332b, in
violation of 18 U.S.C. § 371.  Upon review of the Plea
Agreement, Arbabsiar was found to have a total offense level of
43 and a criminal history category of VI, for a sentence under

the U.S. Sentencing Guidelines ("Guidelines") of 300 months. Accordingly, consistent with both the Guidelines and the Plea Agreement, Arbabsiar was sentenced on May 30, 2013 to a prison term of 300 months. (Sentence Tr. at 15:16-18.)

Petitioner timely filed the instant Section 2255 motion on April 28, 2014, requesting that he be resentenced and asserting three bases upon which to grant relief:  (1) that the Court failed to appropriately consider evidence of mental illness and incompetency; (2) that the Court failed to properly calculate and consider the applicable Guidelines; and (3) that Petitioner did not receive effective assistance of counsel at sentencing. For the reasons discussed below, Petitioner's motion is denied.

## II.  Discussion

### A.  Legal Standard

Section 2255 allows a prisoner held in federal custody to collaterally challenge his federal conviction or sentence. See 28 U.S.C. § 2255(a).  To obtain relief under this provision, a petitioner must establish "a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)).  Section 2255 is not, however, a

2

substitute for direct appeal. See Sapia v. United States, 433 F.3d 212, 217 (2d Cir. 2005). Consequently, claims that could have been raised on direct appeal, but were not, are generally unreviewable under Section 2255. See Bousley v. United States, 523 U.S. 614, 622 (1998); Weber v. United States, No. 06 Civ. 7170, 2007 WL 1834827, at *2 (S.D.N.Y. June 25, 2007).

Because Petitioner is proceeding pro se, his submissions will be "liberally construed in his favor," Simmons v. Abruzzo, 49 F.3d 83, 87 (2d Cir. 1995) (citing Haines v. Kerner, 404 U.S. 519, 520 (1972)), and will be read "to raise the strongest arguments that they suggest," Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996)) (quotation marks omitted).

### B. Procedural Defects

#### 1. Failure to File A Direct Appeal

Arbabsiar has chosen to bring this Section 2255 motion without first making a direct appeal. While such a failure generally precludes further review, claims of ineffective assistance of counsel are exempted from the procedural default rule. See Massaro v. United States, 538 U.S. 500, 505 (2003). Moreover, Arbabsiar can escape the procedural default of his other claims if he can demonstrate (1) cause for failing to raise the issue on direct appeal and prejudice resulting

therefrom or (2) actual innocence. See Sapia, 433 F.3d at 217-
18; Rosario v. United States, 164 F.3d 729, 732 (2d Cir. 1998).
Cause may be established by showing that "the factual or legal
basis for a claim was not reasonably available to counsel" or
that the procedural default was due to ineffective assistance of
counsel. See Bossett v. Walker, 41 F.3d 825, 829 (2d Cir. 1994).
Accordingly, affording Petitioner every favorable inference,
Arbabsiar appears to assert ineffective assistance of counsel
both as a stand-alone claim and as a cause for failing to
directly appeal his other claims. (Pet'r Reply at 1-2.)
Therefore, the Court must consider the adequacy of defense
counsel's performance in determining whether Arbabsiar's
petition is procedurally barred.

Where a defendant asserts ineffective assistance of counsel
to escape procedural default, courts have found that the alleged
deficiency must constitute ineffective assistance under the
standard two-part test established by the Supreme Court in
Strickland v. Washington, 466 U.S. 668 (1984). See Sapia, 433
F.3d at 218 (quoting Johnson v. United States, 313 F.3d 815, 818
(2d Cir. 2002)) (internal quotation marks omitted); Gutierrez v.
United States, No. 04 Civ. 6529, 2005 WL 2207026, at *3 (Sept.
6, 2005).  Therefore, the appropriate test for determining if
Arbabsiar has stated a claim for ineffective assistance, such

that he may also avoid procedural default on his other claims,
is whether the performance of Arbabsiar's trial counsel "fell
below an objective standard of reasonableness and whether the
defendant was prejudiced by counsel's deficient acts or
omissions." Sapia, 433 F.3d at 218.  Petitioner clearly fails to
meet this burden.

As discussed below, Arbabsiar has offered no evidence that
defense counsel acted unreasonably or that he was prejudiced by
counsel's conduct and there is nothing in the record to support
such a finding.  See Strickler v. Greene, 527 U.S. 263, 289
(1999) (noting that a defendant asserting ineffective assistance
of counsel must demonstrate prejudice so substantial that, but
for counsel's deficient conduct, there is a reasonable
probability that the result of the proceeding would have been
different).  Alternatively, Arbabsiar cannot claim that he is
actually innocent because he conceded his guilt upon entering
his plea and has made no subsequent claim of innocence.  See
Weber, 2007 WL 1834827, at *2 (citing United States v.
Mikalajunas, 186 F.3d 490 (4th Cir. 1999)) (noting that post-
judgment claims for sentencing relief are inconsistent with
claims of innocence); Aponte-Vega v. United States, No. 01 Civ.
1160, 2003 WL 22097506, at *2 (S.D.N.Y. Sept. 9, 2003).
Arbabsiar has therefore failed to demonstrate ineffective

assistance of counsel and, accordingly, his remaining claims are procedurally barred for failing to file a direct appeal.

### 2.   The Plea Agreement

Arbabsiar's petition is also procedurally barred in its entirety for the independent reason that it violates the terms of the Plea Agreement.  Under the Agreement, Arbabsiar expressly waived his right to either appeal or collaterally attack "any sentence at or below the Stipulated Guidelines Sentence of 300 months' imprisonment." (Plea Agreement at 5-6.)  Because he received a sentence of 300 months, his right to bring a Section 2255 petition has therefore been waived unless the waiver can be shown to have been invalid.

It is well-established that a defendant's knowing and voluntary waiver of the right to appeal a sentence falling within an agreed upon Guidelines range is presumptively valid and enforceable. See, e.g., United States v. Riggi, 649 F.3d 143, 147 (2d Cir. 2011).  This presumption can be overcome, however, where a criminal defendant's guilty plea is not made "competently and intelligently."[1] See Godinez v. Moran, 509 U.S.

---

[1] A waiver provision of a plea agreement can also be rendered unenforceable if it was entered into without the effective assistance of counsel. See United States v. Hernandez, 242 F.3d 110, 113-14 (2d Cir. 2001).  For the reasons discussed below, however, Petitioner's assertion of ineffective assistance is without merit and so cannot undermine the effect of his plea. See United States v. Monzon, 359 F.3d 110, 118-19 (2d Cir. 2004).

389, 396 (1993); <u>Lear v. Poole</u>, 711 F. Supp. 2d 288, 294 (W.D.N.Y. 2010).  The federal standard for determining competency at trail is whether a defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and has "a rational as well as factual understanding of the proceedings against him." <u>Godinez</u>, 509 U.S. at 396.  The ordering of an incompetency hearing, however, is not a perfunctory act; rather, such an order requires the court to determine that there is "reasonable cause to believe" that the defendant may be incompetent. <u>See</u> <u>United States v. Hall</u>, 523 F.2d 665, 667 (2d Cir. 1975).  In considering whether reasonable cause exists, the burden of proving incompetence rests with the defendant. <u>Medina v. California</u>, 505 U.S. 437, 450 (1992) (noting that the Supreme Court has required only that the defendant be given a "reasonable opportunity" to demonstrate his incompetence).

Arbabsiar argues that his plea and waiver are invalid because the Court failed to conduct a pre-plea hearing into his competency, even though the Court was "on notice of a mental defect" affecting Arbabsiar's ability to understand the proceedings against him. (Pet'r Reply at 2-3.)  In considering evidence of incompetency, however, a defendant's own statements at a plea hearing constitute a "formidable barrier" that cannot

7

be overcome by conclusory allegations or contentions that "in the face of the record are wholly incredible." Lear, 711 F. Supp. 2d at 294-95; accord Abramo v. United States, No. 12 Civ. 1803, 2014 WL 1171735, at *9 (S.D.N.Y. Mar. 19, 2014) (noting that a district court may rely upon the defendant's own sworn statements).  As the record makes clear, Arbabsiar affirmatively stated that he had discussed the charges and plea with his attorney, that he understood the Plea Agreement and the consequences of his plea, and that he understood he was waiving all rights to withdraw, appeal, or otherwise attack his plea and conviction. (Plea Tr. at 6-17).  Moreover, because "counsel is well-positioned to know whether the defendant is able to participate in his own defense," a district court may properly consider statements by defense counsel as further evidence of a defendant's competence. See United States v. Del Carpio, 63 Fed. Appx. 539, 541 (2d Cir. 2003).  To that end, the Court specifically inquired whether there was any question as to Arbabsiar's competency prior to accepting his guilty plea.  In response, defense counsel unambiguously affirmed that Arbabsiar was competent, that he understood the proceedings against him, and that it was appropriate for him to plead guilty. (Plea Tr. at 5.)

8

Arbabsiar also asserts that the evidence from the post-plea
psychiatric evaluation cast sufficient doubt on his competency
during the proceedings so as to require that the Court order a
new competency hearing.  This contention is simply not supported
by the record.  If anything, the post-plea psychiatric evidence
presented to the Court supports the exact opposite conclusion:
as the Court noted at sentencing, Dr. Michael First—who served
as an expert witness for the defense—concluded in his April 16,
2013 report that Arbabsiar knew right from wrong and was
mentally competent to stand trial. (Sentence Tr. at 14.)

Therefore, to the extent that Arbabsiar now asserts that
the Court was "on notice of a mental defect" affecting
Arbabsiar's ability to understand the proceedings against him
(Pet'r Reply at 2-3.), his claim is directly contradicted by the
record at the plea hearing and at sentencing.  As a result,
there is no reasonable basis for this Court to order a new
competency hearing; rather, the Court finds that the plea and
waiver were made competently and intelligently, such that the
instant petition is procedurally barred.

### C. Petitioner's Motion Is Substantively Meritless

Arbabsiar argues that resentencing is required in this case
because (1) the Court failed to adequately consider whether his
mental health at the time of the offense warranted a downward

9

departure from the Guidelines, (2) the Court failed to apply the
proper base and final offense levels in calculating the
appropriate Guidelines range, and (3) Arbabsiar received
ineffective assistance of counsel in the negotiation of the plea
and at sentencing.  Because the procedural default doctrine is
"prudential rather than jurisdictional," this Court can and will
address the merits of Petitioner's claims, including whether the
performance of Arbabsiar counsel during the plea negotiation and
at sentencing was in fact objectively unreasonable. See
Gutierrez, 2005 WL 2207026, at *3.  For the reasons discussed
below, Petitioner's arguments are without merit.

### 1. Mental Competency

Arbabsiar asserts that the Court failed to adequately
consider evidence that his offense was driven by his mental
state, but instead "basically refute[d] the facts as testified
to by the doctor without any information of conclusive rebuttal
testimony." (Pet'r Mem. at 2.)  Petitioner also asserts that the
Court abused its discretion when it found the Government's
medical witness "more convincing" than the witness for the
defense. (Pet'r Reply at 4.)  These claims are entirely without
merit.

As the record makes clear, the Court heard and considered
extensive evidence relating to Arbabsiar's mental condition.

10

Prior to sentencing, the Court held a two-day <u>Fatico</u> hearing on the specific issue of Arbabsiar's mental health at the time of the offense, during which it considered expert testimony from Dr. First, a Professor of Clinical psychiatry who testified for the defense, and from two Government witnesses, Dr. Gregory Saathoff, a psychiatrist, and Dr. Elissa Miller, the Chief Psychologist at the Metropolitan Correctional Center. (Sentence Tr. at 13.)  The three witnesses that testified as to Arbabsiar's mental condition were "all qualified in their areas of expertise." (Sentence Tr. at 14.)  However, the Court is not bound to uncritically accept the conclusions of expert witnesses, including physicians or psychiatrists, if for no other reason than "a determination of legal competence is not equivalent to a medical diagnosis." <u>Id.</u> at 200.  For this reason, a court's decision to credit the conclusions of one expert over another does not suggest a lack of confidence in their professional expertise or veracity; rather, presented with differing opinions, it is the court's responsibility to render judgment. <u>Id.</u> at 200-01.

Here, the Court specifically referenced the evidence and testimony of the three experts prior to sentencing.  In light of Dr. First's concession that Arbabsiar's alleged hypomanic episodes did not persist continuously throughout the conspiracy,

the fact that Dr. First's diagnosis changed over time from
bipolar I to bipolar II, and the greater time that Arbabsiar
spent with Dr. Saathoff than with Dr. First, the Court concluded
that Dr. Saathoff was more convincing than Dr. First and ruled
that Arbabsiar was not suffering from a bipolar disorder at the
time of the offense. (Sentence Tr. at 14.)  The Court also noted
that Dr. First concurred in the view that Arbabsiar knew right
from wrong and was competent to stand trial. (Id.)  As the
record makes clear, therefore, the Court carefully considered
expert testimony and other evidence before determining that
Arbabsiar's offense was not driven by an altered mental state.

## 2. Sentencing Guidelines

Arbabsiar also asserts that the Guidelines, as detailed in
the Plea Agreement and referenced during the plea, were
improperly calculated.  Specifically, Arbabsiar makes four
claims:  (1) that as part of the Plea Agreement he did not admit
to participating in a conspiracy or solicitation to commit
murder, as charged in Count 2, and so his base offense level was
incorrectly calculated at 33; (2) that his offense level under
Count 2 was improperly increased four levels to 37 because he
never admitted to receiving something of pecuniary value for
undertaking the murder; (3) that his offense level was
improperly increased a further twelve levels because he did not

12

admit to terroristic acts; (4) that he did not admit to committing an offense against the United States as charged in Count Three; and (5) that the Court wrongly denied Arbabsiar a three-level decrease for his "acceptance of responsibility." Again, these assertions are flatly contradicted by the record.

As an initial matter, the Court notes that Arbabsiar's final offense level was determined not by Count 2, but by Count 3, which contained an applicable base level of 43. (Plea Agreement at 4.) Consequently, his first two claims—even if true—are without effect.[2] While Arbabsiar also asserts that he did not admit to conspiring to kill or maim any person within the United States or to create a substantial risk of serious

---

[2] Arbabsiar's base offense level under the Plea Agreement was determined to be the highest level applicable to Counts One, Two, and Three, which were grouped together because they involved the same victim and were connected by a common criminal objective. See U.S.S.G. §§ 3D1.2(b), 3D1.3(a). In any event, however, the Court notes that the offense level relating to conspiracy to commit murder for hire, as stated in Count 2, and the enhancement based on the offer or receipt of something of pecuniary value for undertaking that murder, were both properly calculated. First, as part of the Plea Agreement and plea hearing, Arbabsiar specifically admitted that he and his co-conspirators agreed to cause the assassination of the Saudi Arabian Ambassador to the United States. (Plea Agreement at 7; Plea Tr. at 18.) Second, Arbabsiar's base offense level under Count 2 was properly increased to 37 because the enhancement is not dependent on the defendant himself having received a pecuniary benefit; rather, section 2A1.5 of the Guidelines requires a four-point enhancement if, as part of a conspiracy or solicitation to commit murder, the "offense involved the offer or the receipt of anything of pecuniary value for undertaking the murder." U.S.S.G. § 2A1.5(b)(1). This standard was clearly satisfied by Arbabsiar's admission that he agreed to pay another individual $1.5 million to kill the Ambassador. (Plea Agreement at 7; Plea Tr. at 19.)

bodily injury to others by destroying property within the United States, as charged by Count Three, this assertion is clearly contradicted by his admission that he conspired with others to assassinate the Saudi Ambassador while the Ambassador was at a restaurant in Washington, D.C., in violation of Section 371 and 2332b of the U.S. Code. (Plea Agreement at 7; Plea Tr. at 18.) Arbabsiar's base offense level was therefore correctly determined to be 43.

Arbabsiar's third claim relating to the twelve-point terrorism enhancement similarly fails. The Guidelines provide for a twelve-point sentencing enhancement for any felony that involved or was intended to promote a federal crime of terrorism, which includes offenses calculated either to influence the conduct of government by intimidation or to retaliate against government conduct. See U.S.S.G. § 3A1.4 application note 1; 18 U.S.C. § 2332b(g)(5). Arbabsiar's offense levels under all three counts was therefore properly increased by twelve levels, because he specifically admitted to conspiring with officials in the Iranian military to cause the assassination of the Saudi Ambassador to the United States (Plea Agreement at 7; Plea Tr. at 20.)

Likewise, Arbabsiar's final claim that he did not receive a three-level reduction based on his acceptance of responsibility

is also contradicted by the record.  As an initial matter, his
argument is without effect because, with or without the
reduction, Arbabsiar's final offense level would be above 43
and, as the Court recognized at sentencing, "an offense level of
more than 43 is to be treated as an offense of 43" under the
Guidelines. (Sentence Tr. at 11.)  Nonetheless, Arbabsiar did
receive a reduction to his offense level based on his acceptance
of responsibility.  Both the Plea Agreement and the Court's
statements during the plea hearing reference a final Guidelines
offense level for Count 3 of 52, reflecting a base level of 43,
plus a twelve-point enhancement as an offense involving a crime
of terrorism, and a three-point reduction based on his
acceptance of responsibility. (Plea Agreement at 4; Plea Tr. at
14.)  Therefore, the sentencing Guidelines as stated by the
Court during the plea were properly calculated and were
consistent with the facts and terms of the Plea Agreement.

### 3. Ineffective Assistance of Counsel

As a final matter, Arbabsiar's claims of ineffective
assistance of counsel are also unpersuasive.  As noted above, a
petitioner claiming ineffective assistance of counsel must
demonstrate (1) that his representation fell below "an objective
standard of reasonableness" based on prevailing professional
norms, and (2) that counsel's deficient performance caused

petitioner to suffer significant prejudice. Strickland, 466 U.S. at 687, 694 (1984); Hernandez v. United States, 202 F.3d 486, 488 (2d Cir. 2000) (discussing whether a guilty plea was involuntary and applying the Strickland test).

The Court begins by noting that there is a strong presumption that defense counsel has rendered adequate assistance and exercised reasonable professional judgment. See Strickland, 466 U.S. at 689; United States v. Aguirre, 912 F.2d 555, 560 (2d Cir. 1990).  This presumption recognizes that "there are countless ways to provide effective assistance." See Strickland, 466 U.S. at 689.  For this reason, a defendant seeking relief based on ineffective assistance of counsel must identify the acts by counsel that were allegedly deficient and show that, but for those acts, there is a reasonable probability that the result of the proceeding would have been different. See Strickland, 466 U.S. at 690; McKee v. United States, 167 F.3d 103, 106 (2d Cir. 1999).

Here, Arbabsiar alleges that defense counsel performed unreasonably when she failed to ensure the "proper determination of the base offense and final offense calculation" and in "the negotiation of the plea and waiver." (Pet'r Reply at 2.) Regarding the latter complaint, it appears to be premised on the assertion that he was "marginalized" and "walked-thr[ough]" the

16

proceedings by defense counsel and that the outcome would have
been different if his lack of capacity and mental condition at
the time of the offense had been properly addressed. (Pet'r
Reply at 4-5.)  As discussed above, however, Arbabsiar's
Guideline offense levels were properly calculated, Arbabsiar
himself admitted that he understood the Plea Agreement and the
consequences of his plea, and the Court adequately considered
evidence of Arbabsiar's mental state.  Therefore, there is
nothing in the record to support the belief that defense counsel
acted unreasonably or, even if she did, that Arbabsiar was
prejudiced by counsel's actions.

### III. Conclusion

The Court has considered all of Petitioner's arguments and
has determined that they are without merit.  There is no need
for the requested evidentiary and re-sentencing hearings,
because "the motion and the files and records of the case
conclusively show that the prisoner is entitled to no relief." §
2255(b).  Accordingly, Petitioner's motion to vacate, set aside
or correct his sentence pursuant to Section 2255 is denied.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3),
that any appeal from this Order would not be taken in good
faith, and therefore in forma pauperis status is denied for the

purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

Furthermore, as the Petitioner makes no substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. See 28 U.S.C. § 2253(2).

**SO ORDERED.**

Dated:     November *18*, 2014
           New York, New York

                                        John F. Keenan
                                        _____
                                        John F. Keenan
                                   United States District Judge

18