USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 06/15/2021

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------X
UNITED STATES OF AMERICA              :
                                      :
     -against-                        :   No. 11 Cr. 897 (JFK)
                                      :
MANSSOR ARBABSIAR,                    :   **OPINION & ORDER**
                                      :
                   Defendant.         :
----------------------------------------X

APPEARANCES

FOR DEFENDANT MANSSOR ARBABSIAR:
    Pro Se

FOR THE UNITED STATES OF AMERICA:
    Thomas S. Burnett
    U.S. ATTORNEY'S OFFICE FOR THE SOUTHERN DISTRICT OF NEW YORK

**JOHN F. KEENAN, United States District Judge:**

Before the Court is a pro se motion by Defendant Manssor Arbabsiar seeking a sentence reduction and his immediate release due to the COVID-19 pandemic. Arbabsiar brings the motion pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A), commonly known as the compassionate release statute. The Government opposes Arbabsiar's request.

For the reasons set forth below, Arbabsiar's motion is DENIED.

**I.  Background**

Unless otherwise noted, the following is taken from the materials the parties submitted; Arbabsiar's Presentence Investigation Report, dated April 19, 2013; and the transcript of Arbabsiar's May 30, 2013 sentencing ("Sent. Tr.", ECF No. 62).

1

In ruling on Arbabsiar's request, the Court has considered the arguments advanced in his pro se motion (ECF No. 76) and the Government's letter in opposition (ECF No. 79); Arbabsiar did not file a reply.

On October 17, 2012, Arbabsiar pleaded guilty, pursuant to a plea agreement, to foreign travel and use of interstate and foreign commerce facilities in the commission of murder-for-hire, in violation of 18 U.S.C. § 1958; conspiracy to commit murder-for-hire, in violation of 18 U.S.C. § 1958; and conspiracy to commit an act of terrorism transcending national boundaries, in violation of 18 U.S.C. § 371.  The charges stemmed from Arbabsiar's participation in a nearly six-month long conspiracy with Iranian military officials to assassinate the Saudi Arabian Ambassador to the United States.  As part of the plot, Arbabsiar coordinated the assassination attempt with a confidential source working for the Drug Enforcement Agency who posed as an associate of a sophisticated and violent international drug trafficking cartel that would execute the murder.

Arbabsiar's sentencing occurred on May 30, 2013, during which the Court found a Guideline offense level of 43 and a Criminal History Category of VI, which resulted in a Guidelines sentencing range of 25 years' incarceration.  (Sent. Tr. at 11:10-12:3.)  Before imposing sentence, the Court recounted Arbabsiar's offense conduct, explaining:

> [Arbabsiar] conspired with members of the Islamic Republic Guard Corps to assassinate the Ambassador from Saudi Arabia to the United States in Washington, D.C. He fully realized that this act would likely result in mass casualties. He arranged for two wire transfers in August of 2011 to be sent through Manhattan to an undercover FBI bank account. The wire transfers amounted to a total [of] just under a hundred thousand dollars . . . [which] was to be the down payment for the murder of the Ambassador in a restaurant in Washington, D.C., our nation's capital. When told that there would likely be from "100 to 150 people in the restaurant," including United States Senators, he respond this was "no problem" or "no big deal."
>
> The plot was hatched in Iran, and a member of the Islamic Republic Guard Corps, known as the Qods Force, was among the co-conspirators. Thanks to excellent work by the Federal Bureau of Investigation, the defendant was arrested[,] acknowledged his role in the plot[,] and described the involvement of his Iranian co-conspirators.
>
> The defendant was himself to benefit financially from his involvement in the plot.

(Id. at 12:20-13:15.) The Court noted that "[t]he defense seeks a sentence of 10 years, and the government seeks a 25-year sentence as recommended by the Probation Department." (Id. at 14:1-3.) "Nothing in the record before me warrants a sentence of less than 25 years," the Court concluded. (Id. at 14:23-24.)

> In a case like this, deterrence is of supreme importance[: o]thers who may have financial or political purposes in engaging in acts of violence against the United States or its interests must learn the lesson that such conduct will not be tolerated. The fact that the defendant's age was 58 when he was first questioned and he began to cooperate[,] which he abruptly ceased doing, is [of no] moment.

(Id. at 14:24-15:5.) Accordingly, the Court sentenced Arbabsiar to a total sentence of 25 years' incarceration on the three

3

counts to be followed by three years' supervised release. (Id. at 15:16–25.) To date, Arbabsiar has served approximately 10 years of his sentence. He is scheduled for release on February 6, 2033. See Find an Inmate, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited June 9, 2021).

On March 31, 2021, Arbabsiar filed a pro se motion requesting a reduction in sentence and his immediate compassionate release. (ECF No. 76.) Arbabsiar's motion explained that the conditions of his incarceration are intolerable and he suffers from certain health issues which are now life-threatening due to the pandemic caused by the coronavirus, COVID-19. The Court ordered the Government to respond, and on April 30, 2021, the Government opposed Arbabsiar's request on the grounds that (1) Arbabsiar is fully vaccinated against COVID-19 and thus no extraordinary and compelling reasons support his release; and (2) in any event, modification of Arbabsiar's sentence would be inappropriate under the factors set forth in 18 U.S.C. § 3553(a). (ECF No. 79.) The Court allowed Arbabsiar 30 days to file a reply, however, no such response was forthcoming.

## II. Discussion

### A. Legal Standard

18 U.S.C. § 3582(c)(1)(A) allows a court to modify a term of imprisonment "upon motion of the defendant" provided the

4

defendant has exhausted certain administrative requirements. 18 U.S.C. § 3582(c)(1)(A). Under these circumstances, a court may reduce the defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Id. § 3582(c)(1)(A)(i). In doing so, the Court must also consider "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." Id. § 3582(c)(1)(A). "Application of the § 3553(a) factors requires an assessment of whether the relevant factors outweigh the extraordinary and compelling reasons warranting compassionate release and whether compassionate release would undermine the goals of the original sentence." United States v. Daugerdas, --- F. Supp. 3d ---, No. 09 Cr. 581 (WHP), 2020 WL 2097653, at *4 (S.D.N.Y. May 1, 2020) (alterations and internal quotation marks omitted) (quoting United States v. Ebbers, 432 F. Supp. 3d 421, 430-31 (S.D.N.Y. 2020)).

In the Second Circuit, the policy statement issued by the U.S. Sentencing Commission pertaining to compassionate release, section 1B1.13 of the Sentencing Guidelines, "is not 'applicable' to compassionate release motions brought by defendants," and "cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling." United States v. Brooker, 976 F.3d 228, 236 (2d Cir. 2020). Accordingly, as the

court in United States v. Harris, No. 15 Cr. 445 (PAE), 2020 WL 5801051 (S.D.N.Y. Sept. 29, 2020), explained:

> when assessing a motion brought directly by an imprisoned person rather than by the [Bureau of Prisons], the Court is constrained neither by [§] 1B1.13's enumeration of extraordinary and compelling reasons, nor by its freestanding requirement that the defendant seeking release not pose any danger to the community. Rather, the Court may "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release." However, even if such reasons are present, the Court must also assure itself that release is consistent with "the factors set forth in section 3553(a) to the extent that they are applicable."

Id. at *2 (footnote and internal citations omitted).

"[P]ro se litigants generally are entitled to a liberal construction of their pleadings, which should be read 'to raise the strongest arguments that they suggest.'" Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996)).

### B. Analysis

The Court is sympathetic to the heightened risk certain individuals face from COVID-19, and it has, on very limited occasions, modified an incarcerated defendant's sentence for such reasons. See United States v. Smith, 454 F. Supp. 3d 310, 315 (S.D.N.Y. 2020) (granting release to medically "high risk" and non-violent 62-year-old who suffered from asthma, high cholesterol, blood clots, a thyroid condition, and suspected multiple myeloma); but see United States v. Kerrigan, No. 16 Cr.

576 (JFK), 2020 WL 2488269, at *4 (S.D.N.Y. May 14, 2020) (denying release to non-violent 43-year-old with obesity, liver disease, and high blood pressure). Nevertheless, after considering the 3553(a) factors in this case, the Court is not persuaded that extraordinary and compelling reasons exist to reduce Arbabsiar's sentence. Accordingly, Arbabsiar's motion must be denied. See 18 U.S.C. § 3582(c) (stating a court "may not modify a term of imprisonment once it has been imposed" without a finding that "extraordinary and compelling reasons warrant such a reduction").

First, Arbabsiar has failed to articulate a sufficiently extraordinary or compelling reason why his sentence should be modified. The foundation of Arbabsiar's request is the threat posed by COVID-19. Fortunately, however, Arbabsiar has received an approved vaccine which is "safe and effective at preventing COVID-19," "make[s] it substantially less likely [Arbabsiar] will get COVID-19," and will "help[] keep [Arbabsiar] from getting seriously ill even if [he] do[es] get COVID-19." Benefits of Getting a COVID-19 Vaccine, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html (last visited June 9, 2021). Having now received such protection from the virus, the fundamental and overriding purpose of Arbabsiar's request for immediate release—i.e., the desire to remove him from an

7

environment where he may be exposed to the disease—is significantly less compelling.

Further, although Arbabsiar conclusorily asserts that he suffers from "an immune deficiency caused by years of smoking," obesity, and high blood pressure, Arbabsiar has not demonstrated that he in fact suffers from a sufficiently serious health condition looked to by courts in this context, such as cancer, immunocompromization, or severe obesity. See People at Increased Risk, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html (last visited June 9, 2021) see also, e.g., United States v. Mood, No. 19 Cr. 113 (VB), 2020 WL 3256333, at *1 (S.D.N.Y. June 16, 2020) (denying release to 53-year-old with diabetes, elevated blood pressure, and obesity where "[t]here is no question that [the defendant] has health issues, but his condition is stable and has been effectively managed by routine monitoring and medication").  Indeed, "[t]he current COVID-19 pandemic is an unprecedented worldwide catastrophe.  But it does not warrant the early release of sentenced inmates in federal prisons convicted of serious, dangerous offenses, like [the defendant], whose medical conditions and risk of contracting the virus cannot be deemed 'extraordinary and compelling.'" Mood, 2020 WL 3256333, at *1.

Finally, and decisive here, even if the COVID-19 pandemic and the circumstances of Arbabsiar's incarceration could provide extraordinary and compelling reasons for a sentence reduction, application of the 3553(a) factors cripples his request and outweighs any justification for early release.  Here, the factors that weigh in Arbabsiar's favor, such as the need to provide necessary medical care, are overshadowed by the combined force of "the nature and circumstances of the offense" (i.e., Arbabsiar's crucial role in an outrageous plot by a foreign power hostile to the United States to assassinate a foreign diplomat on American soil by bombing a crowded restaurant in Washington, D.C.) as well as the need for the sentence imposed to "reflect the seriousness of the offense," "promote respect for the law," "provide just punishment for the offense," "afford adequate deterrence to criminal conduct," and "protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a).  For the same reasons that necessitated Arbabsiar's 25-year term of incarceration, which were discussed at his sentencing and are incorporated by reference here, the Court finds that modifying Arbabsiar's imprisonment when he has served less than one-half of that sentence would disserve the above important sentencing factors.  Accordingly, Arbabsiar's motion is denied.

### III. Conclusion

For the reasons set forth above, Defendant Manssor Arbabsiar's motion for a reduction in sentence is DENIED.

The Clerk of Court is directed to terminate the motion docketed at ECF No. 76.

**SO ORDERED.**

Dated:   New York, New York
        June 15, 2021

                                            John F. Keenan
                                  United States District Judge