UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                 :

UNITED STATES OF AMERICA,          :

                                            :          11 Crim. 897 (LGS)

          -against-                :

                                            :

MANSSOR ARBABSIAR,            :          **OPINION & ORDER**
                                Defendant.  :
-------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

Defendant Manssor Arbabsiar moves for a sentence reduction under 18 U.S.C.

§ 3582(c)(1)(A) and the First Step Act.  For the reasons below, the motion is denied.

I.      **BACKGROUND**

On October 17, 2012, Defendant pleaded guilty, pursuant to a plea agreement, to a three-

count Information charging him with (1) conspiracy to commit murder-for-hire, in violation of 18

U.S.C. § 1958; (2) foreign travel and use of interstate and foreign commerce facilities in the

commission of murder-for-hire, in violation of the same statute and (3) conspiracy to commit an

act of terrorism transcending national boundaries, in violation of 18 U.S.C. §§ 2332b and 371.

The charges arose from Defendant's central role in an international conspiracy orchestrated by

the Islamic Revolutionary Guard Corps-Qods Force ("IRGC"), a branch of the Iranian military, to

assassinate the Saudi Arabian Ambassador to the United States.

Beginning in early 2011, Defendant's cousin, a senior IRGC official, recruited Defendant

to identify individuals capable of carrying out attacks in the United States.  Defendant traveled

from Iran to Mexico and met with a confidential informant posing as a member of a Mexican

drug cartel.  During several meetings in June and July 2011, Defendant negotiated with the

informant to assassinate the Saudi Ambassador using explosives in a Washington, DC, restaurant.

Defendant repeatedly affirmed that mass civilian casualties were "no problem" or "no big deal,"

including if "a hundred [people]" died alongside the Ambassador.

In furtherance of the conspiracy, Defendant arranged two wire transfers to send a total of $99,920 from Iran to a U.S. bank account controlled by the informant.  Defendant described these wire transfers as a down payment for the murder.  Although advised by his handlers in Iran not to do so, Defendant agreed to travel to Mexico to serve as "collateral" for the balance of the fee.  Defendant was arrested on September 29, 2011, at New York's John F. Kennedy International Airport after he was denied entry upon arrival to Mexico.  Following his arrest, Defendant waived his *Miranda* rights and gave detailed statements confessing his role and describing the involvement of his co-conspirators.  On May 30, 2013, Judge John F. Keenan sentenced Defendant principally to twenty-five years' imprisonment, consistent with the Guidelines recommendation of the same term.  The Court emphasized the seriousness of the offense and the need for general deterrence, concluding that "[n]othing in the record . . . warrants a sentence of less than 25 years," and that "[i]n a case like this, deterrence is of supreme importance."

In March 2021, Defendant filed a pro se motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A), citing the risks of COVID-19, his age and his health conditions.  Judge Keenan denied the motion, concluding that Defendant's receipt of the COVID-19 vaccine and lack of qualifying medical issues precluded a finding of extraordinary and compelling circumstances.  Judge Keenan also held that, even if such circumstances existed, the § 3553(a) sentencing factors weighed strongly against early release given the seriousness of the offense, the need for deterrence and the need for just punishment.

On August 23, 2023, Defendant filed the instant motion for compassionate release, later amended with the assistance of counsel.  Defendant, now seventy-one years old, has served

approximately fourteen-and-a-half years of his twenty-five-year sentence. Defendant argues that his age, health conditions, mental health history, rehabilitation, conditions of confinement and willingness to be deported upon release support a sentence reduction. The Government opposed the motion, arguing that the record does not establish extraordinary and compelling reasons for release and that the § 3553(a) factors strongly disfavor a sentence reduction. Defendant and a fellow inmate, Michael Pennell, each filed a letter with updates on Defendant's condition and the challenges he faces, particularly with his limited vision.

## II.    STANDARD

Defendant moves for a reduction of his term of imprisonment under 18 U.S.C. § 3582(c)(1)(A), as modified by the First Step Act of 2018. "Section 3582(c)(1) permits a district court to reduce a term of imprisonment if after considering the factors set forth in 18 U.S.C. § 3553(a) to the extent that they are applicable, it finds that extraordinary and compelling reasons warrant such a reduction." *United States v. Fernandez*, 104 F.4th 420, 426-27 (2d Cir. 2024).[1] "The burden of showing that the circumstances warrant a sentence reduction is on the defendant." *Id.* at 427.

A district court has broad discretion to consider any extraordinary and compelling reasons a defendant may raise. *Id.*; *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). Under U.S.S.G. § 1B1.13(b), extraordinary and compelling reasons may include (1) serious "medical circumstances" such as "terminal illness," (2) advanced age of at least sixty-five years and serious health deterioration, (3) difficult "family circumstances" including the death or incapacitation of

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

certain close family members, (4) sexual assault or serious physical abuse while incarcerated, (5) other reasons similar in gravity and (6) unusually long sentences. As relevant here, the Guidelines also clarify that rehabilitative efforts alone do not constitute extraordinary and compelling reasons for release. U.S.S.G. § 1B1.13(d).

Where a defendant establishes extraordinary or compelling circumstances, the court must also consider the potentially applicable § 3553(a) factors. These factors include, in relevant part:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; . . . to afford adequate deterrence to criminal conduct; . . . [and] to protect the public from further crimes of the defendant;
> . . .
> (4) the kinds of sentence and the sentencing range established for [the defendant] . . . as set forth in the guidelines . . . ;
> . . .
> (5) any pertinent policy statement . . . issued by the Sentencing Commission . . . ;
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). If "a district court denies a defendant's motion under § 3582(c)(1)(A) in sole reliance on the applicable § 3553(a) sentencing factors, it need not also determine whether the defendant has shown extraordinary and compelling circumstances that might (in other circumstances) justify a sentence reduction." *United States v. Keitt*, 21 F.4th 67, 69 (2d Cir. 2021).

## III.    DISCUSSION

The parties do not dispute that Defendant has exhausted his administrative remedies. Defendant argues that extraordinary and compelling circumstances exist and that the § 3553(a)

4

factors also support a sentence reduction.  For the reasons below, Defendant's motion is denied.

### A.  Extraordinary Circumstances

Defendant identifies five bases for relief:  his (1) age and physical health, (2) mental health, (3) rehabilitation in prison, (4) harsh conditions of confinement and (5) willingness to renounce his U.S. citizenship and be deported to Iran upon release.  Considered individually or in combination, these circumstances do not establish "extraordinary and compelling reasons" within the meaning of 18 U.S.C. § 3582(c)(1)(A) and U.S.S.G. § 1B1.13.

### 1.  Age and Physical Health

Defendant's age and physical health do not satisfy either § 1B1.13(b)(1) or § 1B1.13(b)(2).  Under § 1B1.13(b)(1), a defendant must show "a serious physical or medical condition," "serious functional or cognitive impairment" or comparable medical circumstances that substantially diminish his ability to provide self-care in prison and are not expected to improve, or a need for long-term or specialized medical care that the Bureau of Prisons ("BOP") is not providing and without which he faces serious deterioration or death.  Under § 1B1.13(b)(2), a defendant of advanced age must show "a serious deterioration in physical or mental health because of the aging process," typically in conjunction with having served a substantial portion of his sentence.

Defendant is seventy-one and has several chronic conditions, including cataracts, hypertension, Stage 3 chronic kidney disease and gastric issues.  He also recently reported in a letter an age-related macular degeneration diagnosis, with a fellow inmate attesting that Defendant's vision loss impairs his daily life.  But Defendant's medical records reflect that his chronic conditions have been identified and are being treated:  He receives medication, corrective

lenses, referrals for cataract evaluation and follow-up instructions.  There is no indication that his conditions are uncontrolled or that BOP has declined or is unable to provide the care recommended by its own providers or outside specialists -- nor has Defendant endured any prolonged hospital stays.  *See United States v. Rodriguez*, No. 22-93, 2023 WL 3001238, at *2 (2d Cir. Apr. 19, 2023) (summary order) (affirming denial of compassionate release for defendant with serious medical conditions, as he had no recent prolonged hospitalizations, no terminal diagnosis and was receiving adequate care from BOP).

Courts routinely deny compassionate release where serious but chronic medical conditions -- including eye disease -- are stable or manageable in BOP custody, including for elderly defendants.  *See, e.g.*, *United States v. Borelli*, No. 84 Crim. 63, 2021 WL 2228075, at *2-3 (S.D.N.Y. June 2, 2021) (denying release to seventy-two-year-old where diabetes, heart disease and cataracts were "already well-controlled" through BOP care); *United States v. Gotti*, 433 F. Supp. 3d 613, 616-17, 619 (S.D.N.Y. 2020) (denying release to approximately eighty-year-old despite glaucoma and blindness in one eye where BOP could "adequately treat[] and monitor[]" his conditions); *United States v. Peralta*, No. 19 Crim. 135, 2020 WL 6683095, at *2 (S.D.N.Y. Nov. 12, 2020) ("macular and corneal degeneration" and "other issues" with right eye insufficient in COVID-19 context); *Musa v. United States*, 502 F. Supp. 3d 803, 812-14 (S.D.N.Y. 2020) (similar); *see also United States v. Al Ghazi*, No. 07 Crim. 354, 2025 WL 918788, at *1-2 (S.D.N.Y. Mar. 26, 2025) (denying release to seventy-eight-year-old who failed to satisfy § 1B1.13(b)(1) and (b)(2) and noting cases denying relief where medical conditions were controlled in BOP custody).

By contrast, courts have found extraordinary and compelling reasons under

6

§ 1B1.13(b)(1) or (b)(2) in cases of vision loss where severe, often irreversible impairment -- coupled with inadequate BOP treatment -- leaves the defendant effectively unable to care for himself or at imminent risk of catastrophic deterioration. *See, e.g.*, *United States v. Bang*, No. 19 Crim. 213-2, 2024 WL 1051582, at *2-4 (S.D.N.Y. Mar. 11, 2024) (granting release where rapidly progressing bilateral cataracts left defendant "legally blind, with little to no vision in both eyes" and unable to perform basic tasks and BOP had not provided necessary specialized care); *United States v. Salazar-Espinosa*, No. 05 Crim. 517, 2023 WL 5934920, at *2-4 (S.D.N.Y. Sep. 12, 2023) (granting release for defendant with progressive macular hole and retinal tear where delayed surgery caused permanent vision loss and treating specialists warned BOP could not provide necessary follow-up); *United States v. Hussain*, No. 19 Crim. 40, 2023 WL 4529625, at *4-7 (S.D.N.Y. July 12, 2023) (granting release where end-stage glaucoma and repeated complications left defendant "effectively blind" and BOP did not provide necessary and timely care); *United States v. Richardson*, No. 16 Crim. 461, 2022 WL 5246076, at *3-4 (E.D.N.Y. Oct. 6, 2022) (granting release where deteriorating eye condition left defendant legally blind in both eyes and resulting sexual abuse by BOP staff rendered continued custody inconsistent with § 3553(a)).

Defendant's circumstances are materially different. Unlike in *Bang*, *Salazar-Espinosa* and *Hussain*, the record does not show that Defendant is fundamentally unable to perform activities of daily living or that BOP neglect has accelerated irreversible harm. Defendant's impaired sight is notable, and due weight has been given to Defendant's and Mr. Pennell's letters describing the challenges Defendant experiences because of his limited vision. But Defendant has not been diagnosed as legally or nearly blind. His cataracts are under evaluation; he has been

7

provided corrective lenses and referred for surgery and there is no indication that BOP has refused or is unable to provide required treatment.  On these facts, Defendant resembles the defendants in *Borelli* and *Gotti* -- older and medically complex, but stable and functioning with BOP care -- rather than defendants in the rare cases where age and infirmity have combined to create extraordinary circumstances warranting sentence reduction.  *Cf. United States v. Ebbers*, 432 F. Supp. 3d 421, 430-32 (S.D.N.Y. 2020) (granting release where multiple serious conditions, including macular degeneration, produced "rapid decline" leaving defendant "sick, weak, disoriented, and bedridden," with BOP unable to meet his needs), *abrogated on other grounds by Brooker*, 976 F.3d 228.

Defendant's assertion that Three Rivers cannot provide him with necessary care is now moot.  According to BOP,[2] Defendant has since been transferred to FCI Florence, which is a Medical Care Level 2 facility capable of managing more intensive medical needs than either FCI Three Rivers or FCI Yazoo City, Defendant's prior facilities.[3]  Defendant's medical records reflect awareness of his cataracts and a directive to follow up with in-house optometry.  Any disruption associated with his transfer is not evidence that BOP is unable to provide necessary

[2] *See* Fed. Bureau of Prisons, *Find an Inmate*, https://www.bop.gov/inmateloc/ [https://perma.cc/7M6N-MM88] (last visited June 4, 2026).
[3] *See* District of Columbia Corrections Information Council, *Federal Bureau of Prisons Institutions and Their Distance, Security, Health, and Mental Levels* (January 2025), https://cic.dc.gov/sites/default/files/dc/sites/cic/page_content/attachments/Info%20Sheet_Security _Health_Mental_Levels_1.9.25.pdf [https://perma.cc/485E-TEXT] (listing FCI Florence, Defendant's current facility, as a Care Level 2 facility and FCI Yazoo City and FCI Three Rivers, Defendant's past facilities, as Care Level 1 facilities); Fed. Bureau of Prisons, *Care Level Classification for Medical Conditions or Disabilities* (October 2025), https://www.bop.gov/resources/pdfs/care_level_classification_guidance_102025_final.pdf [https://perma.cc/WR88-PK5E].

surgery or follow-up care. *See Borelli*, 2021 WL 2228075, at *3 (denying compassionate release where defendant "offered no indication that his medical conditions cannot be managed -- or, for that matter, are not already well controlled -- through BOP-provided medical care"). On this record, Defendant's age-related health issues and vision impairment, while serious, fall within the type of manageable chronic conditions that courts have consistently held do not meet the "extraordinary and compelling" threshold under either § 1B1.13(b)(1) or § 1B1.13(b)(2).

### 2. Mental Health

Defendant's mental health conditions do not constitute extraordinary and compelling reasons for sentence reduction. As part of his sentencing proceedings, Defendant submitted a psychiatric report from a clinical psychiatrist who diagnosed him with Bipolar II disorder. The psychiatrist concluded that Defendant's mental condition contributed to the irrational decisions surrounding the offense -- including his decision to travel to Mexico as "human collateral," despite being advised not to do so. Defendant also has developed an anxiety disorder. But the existence of mental illness, without evidence of incapacitation or inability to function within a correctional setting, does not establish a basis for release. U.S.S.G. § 1B1.13(b); *cf. United States v. Williams*, No. 09 Crim. 558, 2023 WL 4785286, at *10 (S.D.N.Y. July 27, 2023) (granting compassionate release for prisoner with "long history" of "severe mental illness," including psychiatric hospitalizations, that "worsened during his incarceration").

While the validity or seriousness of the diagnosis is not questioned here, Defendant has since received appropriate treatment, and his mental health appears stable. From the records provided, it appears that Defendant is not currently taking any psychiatric medication and has not sought treatment for his anxiety or episodic mood disorders since approximately 2017. The

9

psychiatric report diagnosing Defendant with Bipolar II disorder was also part of the record for sentencing and Defendant's first motion for compassionate release. As the record reflects no significant deterioration or change of circumstance since then, Defendant's mental health conditions do not qualify as extraordinary and compelling circumstances. *See* U.S.S.G. § 1B1.13(b)(1)(B).

### 3. Rehabilitation

Defendant's rehabilitation, though admirable, does not warrant sentence reduction. Defendant cites his strong institutional record and rehabilitation efforts. Since his incarceration, he has incurred only four disciplinary sanctions, none of which were physically violent. The last violation occurred in April 2021, over five years ago. Defendant has participated in educational and vocational training and has been steadily employed by Federal Prison Industries/UNICOR since 2018. His Factory Manager notes that Defendant's work "is reflective of the motivation to rehabilitate and improve to incorporate back into society" and that Defendant is a respectful and dependable worker. Letters from several inmates describe Defendant as a "grandfather figure" who helped others stay out of trouble. Defendant also submitted a personal letter describing his efforts to take classes while incarcerated to assist his transition back to society and help him become "a better son, dad, and grand dad."

While commendable, Defendant's rehabilitation is not by itself legally sufficient to constitute an extraordinary or compelling circumstance. 28 U.S.C. § 994(t); *Brooker*, 976 F.3d at 234, 238. "[T]o find otherwise would convert the process for obtaining compassionate release into a de facto parole system, through which defendants with good behavior are rewarded with sentence reductions, contrary to Congress's intent." *United States v. Tavarez*, No. 20 Crim. 301,

10

2024 WL 2958607, at *2 (S.D.N.Y. June 11, 2024).  Even a "spotless disciplinary record,"

combined with "increased risks of contracting COVID-19," has been found insufficient to

warrant release.  *United States v. Salgado*, No. 15 Crim. 681, 2022 WL 3043100, at *1-2

(S.D.N.Y. Aug. 2, 2022).

Nor do the letters submitted by Defendant, his supervisor and his fellow inmates reflect

such a significant transformation as to outweigh the seriousness of the underlying conduct.  To

constitute extraordinary circumstances, rehabilitation requires far beyond good behavior, remorse

and participation in programming.  *See United States v. Tellier*, No. 92 Crim. 869, 2022 WL

1468381, at *3 (S.D.N.Y. May 10, 2022) (detailing, among other circumstances, defendant's role

as a "jailhouse lawyer," resulting in several overturned convictions).  Even exceptional

rehabilitation may be only one of several extraordinary and compelling reasons that together

warrant release.  Defendant's rehabilitation record, though positive, does not sufficiently exceed

what is expected of incarcerated individuals, even when considered with the other relevant

circumstances.  *See United States v. Tillman*, No. 13 Crim. 362, 2023 WL 355624, at *4

(S.D.N.Y. Jan. 23, 2023) ("While the Court commends [defendant] for apparently participating in

positive prison programs, obtaining a GED, and maintaining a clean disciplinary record, as well

as for his plans to transition back to society, the Court does not find this progress and future plans

to constitute extraordinary and compelling reasons meriting release . . . .").

### 4.  Conditions of Confinement

Defendant's conditions of confinement likewise do not warrant a sentence reduction.  The

instant motion cites the harsh conditions of Defendant's incarceration, including restricted

movement and prolonged isolation during the COVID-19 pandemic, as another basis for release.

"[C]ourts have recognized that the pandemic has made incarceration harsher and more punitive than would otherwise have been the case." *Tellier*, 2022 WL 1468381, at *4. Particularly now, three years after the end of the pandemic, Defendant's "generalized reference to the harsh conditions created by the [COVID-19] pandemic does not, without more, amount to an extraordinary and compelling circumstance." *Tavarez*, 2024 WL 2958607, at *2 (collecting cases); *see United States v. Simon*, No. 18 Crim. 339-1, 2022 WL 17414349, at *3 (S.D.N.Y. Dec. 5, 2022) (finding that the "far more severe and punitive incarceration . . . during the pandemic . . . alone does not support a finding of extraordinary and compelling circumstances"); *United States v. Rojas*, No. 19 Crim. 467, 2022 WL 14784607, at *3-4 (S.D.N.Y. Oct. 26, 2022).

Defendant also alleges that his confinement conditions at MCC-New York (2011-2013) and USP Lewisburg (2013-2015) were unduly harsh. Defendant generally describes long stretches of time when he was confined in conditions resembling solitary confinement, stating that he "was not allowed to speak with anyone other than prison personnel," was denied regular showers and could speak to family only on monitored calls. While such conditions undoubtedly impacted Defendant's mental and physical health, Defendant experienced these conditions over a decade ago and is no longer subjected to them. Without more, Defendant's conditions of incarceration do not constitute extraordinary and compelling circumstances.

### 5. Deportation to Iran

Defendant's agreement to self-deport does not justify early release. Defendant intends to renounce his U.S. citizenship and return to Iran upon release. He argues that his deportation, age and medical issues together ensure that his release would pose no risk to public safety. However, Defendant conspired with high-ranking Iranian officials to carry out the very offense for which he

was convicted. The plot originated in Iran and was approved by senior members of the IRGC, including his cousin. Defendant met repeatedly with a co-conspirator in Iran to finalize the plot, which involved detonating a bomb in a crowded restaurant in Washington, DC. Releasing Defendant to the very country that orchestrated this conspiracy does not mitigate the risk to public safety but instead raises concerns to the contrary and weighs against early release.

### B. Section 3553(a) Factors

To the extent that extraordinary and compelling reasons exist, the § 3553(a) factors weigh against any reduction in sentence. These factors include (1) the nature and circumstances of the offense, (2) the history and characteristics of the defendant, (3) the need to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment and to afford adequate deterrence and (4) the need to protect the public from further crimes. Each consideration counsels against a sentence reduction.

### 1. Nature and Circumstances of the Offense

The extraordinarily serious nature of the offense and Defendant's central role weigh strongly against early release. Defendant conspired with members of a hostile foreign government to assassinate a foreign diplomat using explosives on American soil. He arranged funding, negotiated logistics and personally traveled around the world to coordinate the attack. Defendant's own words demonstrate a chilling disregard for human life. When warned that up to 150 people might be present at the restaurant targeted for the attack, Defendant stated: "They want [the Ambassador] done [killed], if the hundred go with him, fuck 'em." Judge Keenan previously found this conduct "outrageous," and it remains true that "nothing in the record . . .

13

warrants a sentence of less than 25 years."[4]

### 2. History and Characteristics of the Defendant

Defendant's age and health may reduce his risk of recidivism, but his willingness to serve as an operational arm of a foreign terrorist conspiracy weighs against a sentence reduction. Prior to this offense, Defendant had no criminal record and lived a largely law-abiding life. The record reflects that Defendant was not motivated by ideology or personal gain, but rather by a desire to impress his cousin -- a senior official in the IRGC. Defendant's mental health issues may explain aspects of his conduct, but they do not excuse his actions or eliminate the danger posed. His institutional record and rehabilitation efforts are positive but legally insufficient to offset the gravity of the offense.

### 3. Adequate Deterrence

The goal of ensuring adequate deterrence also supports maintaining Defendant's sentence as imposed. The sentence must "reflect the seriousness of the offense," "promote respect for the law," "provide just punishment for the offense" and "afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(A), (2)(B). It must also send a clear message that serious conduct has substantial consequences. *See United States v. Hall*, No. 00 Crim. 103, 2025 WL 240901, at *1-2 (S.D.N.Y. Jan. 17, 2025). This case involves not only attempted murder but international terrorism. Defendant's original sentence is appropriate to reflect the seriousness of the crime and to deter others from similar conduct.

---

[4] Defendant will serve less than twenty-five years even without a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). BOP currently reports his release date as March 5, 2032. That is earlier than September 29, 2036, which is twenty-five years from the date of his arrest on September 29, 2011.

14

### 4. Need to Protect the Public

The need to protect the public similarly weighs in favor of continued incarceration. The instant motion asserts that Defendant's age, infirmity and agreement to deportation mitigate any threat to public safety. As discussed above, continued incarceration is warranted to ensure public safety.

## IV. CONCLUSION

For the reasons stated above, Defendant's motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) and the First Step Act is **DENIED**.

The Clerk of Court is respectfully directed to close the motions at Dkt. Nos. 115 and 124.

Dated: June 9, 2026
New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE